MAX N. TOBIAS, JR., Judge.
liThe appellant, Philippe Uson (“Uson”), appeals a final judgment rendered in favor of the appellee, Bourbon Nite-Life, L.L.C. (“BNL”), sustaining BNL’s exception of no right of action, dismissing with prejudice all of the claims in Uson’s reconventional demand brought against BNL. Uson also appeals the denial of his related motion for new trial. For the following reasons, we affirm the trial court’s judgments.
I.
In December 2003, BNL entered into a management agreement (the “Agreement”) with Bourbon Enterprises, Inc. (“BET”), whereby BET agreed to manage, operate, promote, and maintain Razzoo’s, a New Orleans Bourbon Street nightclub. On the last page of the Agreement, Uson, the owner of BET, individually intervened therein to personally guarantee the performance of BET’s corporate obligations as well as those obligations delegated specifically to Uson as enumerated therein.[1] According to the Agreement, BET had the exclusive and full responsibility for staffing the nightclub and employee training and ensuring that Razzoo’s was a safe and secure facility.
|2On 19 July 2006, the plaintiff, Brigham Brednich, filed suit against BNL and BET seeking damages as a result of injuries he allegedly sustained in 2005 after being knocked down by a bouncer at Razzoo’s. BNL was named a party defendant as the owner of Razzoo’s and BET was named a party defendant as Razzoo’s manager.
Though the Agreement was in full force and effect on the date Brednich allegedly sustained his injuries, the Agreement was terminated in October 2009. Specifically, Gaetanna Edin Tammetta, on behalf of BNL, and Uson, on behalf of BET, entered into an agreement in principle on 27 October 2009 terminating the Agreement and addressing other related matters.
In April 2011, nearly five years after the inception of this litigation and 18 months after the termination of the Agreement, BNL filed a cross-claim against BET seeking any and all costs and attorneys’ fees incurred by BNL in defending against Brednich’s claims per the terms of the Agreement. BNL also sought recovery from BET of the amount of any judgment rendered against BNL on Brednich’s main demand. BET answered BNL’s cross-claim and filed its own cross-claim against BNL seeking indemnification and contribution for all amounts paid or to be paid for Brednich’s claims. BET’s cross-claim was silent as to any other claims it may have had against BNL.
In July 2011, BNL filed a third-party demand against Uson personally seeking defense and indemnity in accordance with Uson’s written personal guarantee to perform all obligations of BET per the Agreement. Uson answered the demand and, further, asserted a reconventional demand against BNL, alleging |sthat BNL breach *238 ed the Agreement with BET resulting in personal damages to Uson.[2] Specifically, Uson claimed that he personally suffered damages, including, but not limited to, (a) loss of compensation, of expense reimbursement, and of undistributed profits, all as allegedly provided for the by the Agreement, and (b) other unnamed damages to be proven at trial. In response, BNL filed an exception of no right of action averring that Uson, who was only an intervenor and not an actual party to the Agreement, lacked standing to individually assert any claims on behalf of BET.
BNL’s exception came for hearing on 10 January 2011, at which time the trial court granted the exception finding that Uson had no right of action against BNL for damages he personally sustained for an alleged breach of the Agreement. Judgment was rendered on 17 January 2012, dismissing Uson’s reconventional demand against BNL, with prejudice. Uson filed a motion for new trial, which the trial court denied by judgment dated 16 May 2012. Uson’s timely appeal followed.
II.
Uson contends the trial court erroneously granted BNL’s exception of no right of action because it failed to conclude that he was a party to the Agreement and, as such, maintained a right to sue for personal damages sustained as a result of BNL’s purported breach. We disagree.
Determination of whether a party has a right of action is a question of law. Acorn Community Land Ass’n of Louisiana, Inc. v. Zeno, 05-1489, p. 3 (La.App. 4 Cir. 6/21/06), 936 So.2d 836, 838. An appellate court reviews questions of law by making a determination as to whether the trial court was legally correct or legally incorrect. Id.
The function of an exception no right of action is to determine whether the party asserting the action belongs to a class of persons to whom the law grants the cause of action asserted. Industrial Companies, Inc. v. Durbin, 02-0665, p. 11 (La.1/28/03), 837 So.2d 1207, 1216. The no right of action exception assumes that the petition states a valid cause of action for some person. Id. at 12, 837 So.2d at 1216. The exception of no right of action does not raise the question of the party’s ability to prevail on the merits of the case. Wallace Drennan, Inc. v. Sewerage & Water Board, 98-2423, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 861, 864. Evidence is admissible to rebut or support an exception of no right of action when the grounds of the exception do not appear in the petition. La. C.C.P. art. 931. See also Eubanks v. Hoffman, 96-0629, pp. 5-6 (La.App. 4 Cir. 12/11/96), 685 So.2d 597, 600.
In order for Uson to maintain an action against BNL for losses he contends he individually incurred as a result of BNL’s alleged breach, one must first determine that Uson was an actual party to the Agreement. A copy of the Agreement was introduced into evidence. The trial court determined that Uson’s intervention into the Agreement was to guarantee the performance of BET’s obligations thereunder and did not make him a party thereto.[3] The trial court determined that Uson, indi *239 vidually, had no enforceable interest in the Agreement |sand, therefore, could not sue for any personal damages he may have sustained from an alleged breach. We agree.
The Agreement states that it was being executed by and between BNL and BET. BET, not Uson, undertook complete responsibility for managing, operating, promoting, and maintaining Razzoo’s. All payments made pursuant to the Agreement were made to BET; no provision allowed for or entitled Uson to individual compensation or expenses. Moreover, Uson was the principal owner and an employee of BET. While various provisions of the Agreement established obligations for personal performance undertaken and agreed to by Uson, as well as an agreement to be personally responsible for the performance of BET’s obligations, no reciprocal obligations on the part of BNL to Uson were created by which Uson would be considered a party. Additionally, by intervening into the Agreement, Uson did not become a party to it or thereby acquire any personal benefits or rights against BNL. Uson’s intervention into the Agreement was made solely to provide security to BNL for the performance of BET’s obligations thereunder. See La. C.C. art. 1913. Uson was solely a guarantor or surety of BET’s obligations. See La. C.C. art. 8035.[4] Accordingly, we find the trial court properly determined that Uson was not a party to the Agreement and, thus, had no personal right of action against BNL for personal damages that he may have sustained as a result of BNL’s purported breach.
Though Uson, as solely a guarantor or surety, lacked standing to bring a claim against BNL for his own personal losses, we note that Uson might have had ^standing at one time to assert an oblique action[5] against BNL for a cause of action that BET may have had but failed to exercise against BNL for losses it sustained as a result of BNL’s alleged breach (i.e. wrongful termination of the Agreement, loss of net profits, etc.). However, in asserting an oblique action, Uson could only assert those rights belonging to BET.
The record shows that BET was named a defendant in the underlying suit by way of Brednich’s first supplemental and amending petition filed on 11 July 2008. Thereafter, on 19 May 2011, BET filed a cross-claim against BNL seeking indemnity and contribution. The cross-claim is devoid of any claim by BET that it may have had against BNL for breach of the Agreement or for loss of profits and/or compensation. La. C.C.P. art. 425 A provides that “[a] party shall assert all causes of action arising out of the same transaction or occurrence that is the subject matter of the litigation.” Because BET failed to assert all claims it may have had against BNL pertaining to the Agreement in its cross-claim as required by article 425, BET effectively waived those claims, thereby precluding Uson from asserting those claims against BNL in an oblique action.
*240 III.
Accordingly, we conclude that Uson had no right of action against BNL for any personal damages he may have sustained as a result of any breach by BNL of the Agreement. Any right of action Uson would have had would have been in the form of an oblique action which he cannot now assert by virtue of BET’s failure to |7assert same in its cross-claim that is now res judicata. Having found no error of law in its judgment, we hold the trial court did not abuse its broad discretion when it denied Uson’s motion for new trial. La. C.C. art. 1972; see also Guillory v. Lee, 090075, p. 38 (La.6/26/09), 16 So.3d 1104, 1131; McGhee v. Wallace Drennan, Inc., 04-0950, p. 11 (La.App. 4 Cir. 4/20/05), 904 So.2d 3, 9.

AFFIRMED.

LOBRANO, J., concurs in the result.

. It is undisputed that BET, while a corporation, was a one-person enterprise involving Uson. At all times pertinent, Uson was an employee of and compensated by BET.

. Uson contends that BNL breached the Agreement by terminating it without cause and by failing to give Uson or BET written notice of default and thirty days within which to correct the alleged default resulting in his incurring personal damages.

. Uson contends that his intervention into the Agreement, coupled with the obligations he personally undertook as set forth therein, made him an actual party rather than a mere guarantor of BET's obligations and, accordingly, vested him with certain contractual rights as against BNL.

. La. C.C. art. 3035 relates to "suretyship,” which provides that a "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."

. Oblique actions are governed by La. C.C. art. 2044, which provides:
If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor.
For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.